IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL WILLIAMS,                                                   MOVANT

v.                                                   No. 4:13CR169-NBB-JMV

UNITED STATES OF AMERICA                                        RESPONDENT

### MEMORANDUM OPINION

This matter comes before the court on the motion of Michael Williams to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Mr. Williams has replied and submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus.*

*Id.*

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## Procedural Posture

On October 13, 2013, a federal grand jury returned an indictment charging Michael Williams with one count of conspiracy to commit arson of a building used in interstate commerce in violation

- 3 -

of 18 U.S.C. §§ 371 and 844(i), and one count of arson of a building used in interstate commerce in violation of 18 U.S.C. §§ 2 and 844(i). (Doc. 4). Williams entered a guilty plea on November 3, 2014. (Doc. 56). At the sentencing hearing on March 9, 2015, the court rejected the sentence agreement and allowed Mr. Williams to withdraw his guilty plea. (Doc. 63). The order granting Williams' motion to withdraw the guilty plea was entered on March 13, 2015. (Doc. 61). The trial commenced on May 18, 2015. The jury found Williams guilty of both counts. (Doc. 72). On July 27, 2015, the court sentenced Mr. Williams to serve sixty months in the custody of the Bureau of Prisons on both Counts 1 and 2, to be served concurrently, and to pay restitution to Berkley Southeast Insurance and State Farm Insurance in the total amount of $368,632. (July 27, 2015 Sentencing Hearing Transcript at 6- 7). Mr. Williams appealed his conviction, and his conviction was affirmed. *United States v. Williams*, 667 Fed. App'x. 489 (5th Cir. 2016).

Mr. Williams then filed a motion to vacate sentence under 28 U.S.C. § 2255, in which he presents the following claims for relief:

(1) The Government engaged in "judge shopping;"

(2) The trial court forced Mr. Williams to go to trial by rejecting the plea agreement reached between him and the government;

(3) The trial court failed to issue a jury instruction regarding Mr. Williams' right not to testify at trial;

(4) The government failed to produce Mr. Sian Green as a witness for trial, instead, "allow[ing] Mr. Green to abscond to Jamaica even though a subpoena was in place to have him appear at trial;"

(5) Mr. Williams was denied the right to confront Mr. Green as a witness against him, as Mr. Green's testimony was entered into evidence in the form of a deposition (including the video recording of the deposition);

(6) Denial of the right to a speedy trial under both the Speedy Trial Act and the United States Constitution;

(7) Counsel was ineffective in failing to file various motions:

- 4 -

a. Pretrial motion to dismiss indictment based upon Sian Green's confession to the arson and the failure to identify other conspirators;

b. Pretrial motion for *Brady* materials;

c. Counsel failed to file a pretrial motion to subpoena Sian Green as a witness for trial;

d. Counsel failed to file a pretrial motion to exclude the video deposition of Sian Green;

e. Counsel failed to file a motion objecting to the redactions in the video deposition offered into evidence at trial.

f. Counsel failed to file a motion for discovery from the government's warrant witness, Sian Green;

(8) The evidence introduced at trial was insufficient to support the jury's verdict of guilty on the charges of conspiracy to commit arson under 18 U.S.C. §§ 371 and 844(i) and aiding and abetting the commission of arson under 18 U.S.C. §§ 2 and 844(i);

(9) Counsel failed to challenge the amount of restitution;

(10) Counsel failed to object to the court's rejection of the plea agreement;

(11) Counsel failed to object to the court's provision of only 15 to 20 minutes for Mr. Williams to confer with counsel regarding whether to go move forward with the plea, knowing that the court might impose a more stringent sentence than that set forth in the plea agreement – or proceed to trial.

(12) Trial counsel failed to object to the court's decision not to seek a "negative inference" instruction regarding Mr. Williams' decision not to testify.

(13) Appellate counsel failed to sufficiently consult with Mr. Williams during the appeal process, limiting contact to a brief telephone call;

(14) Appellate counsel failed to challenge the amount of restitution;

(15) Appellate counsel failed to raise ineffective assistance of trial counsel as a ground for appeal;

(16) Appellate counsel failed to raise the absence of witness Sian Green as a ground for appeal;

(17) Appellate counsel failed to raise the court's rejection of the plea agreement as a ground for appeal;

(18) Appellate counsel did not provide Mr. Williams with a copy of appellate documents, causing him to file a *pro se* brief (which the Fifth Circuit Court of Appeals rejected).

As relief, Mr. Williams requests "that his sentence, judgment and conviction be vacated."  Doc. 98 at 41.

### Ground (1):  The Government Did Not Engage in "Judge Shopping"

Under the Federal Rules of Criminal Procedure, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise."  Fed. R. Crim. P. 5(a)(1)(A).  Mr. Williams argues that the government engaged in "judge shopping."  He alleges that two judges who were randomly assigned to the case "removed" themselves, and the government selected a judge "of its choice."  (Petitioner's Brief pg. 5).

The Article III judge initially assigned to the case was District Judge Mills.  Magistrate Judge Virden presided over Mr. Williams' initial appearance, arraignment, and detention hearing.  Due to a conflict, on October 23, 2014, Judge Mills entered an order transferring the case to the current presiding judge.  (Doc. 47).  The government has no say in the assignment of judges to cases – and thus did not (and could not) engage in "judge shopping" in this way.

A magistrate judge was initially assigned to Mr. Williams' case.  Magistrate judges are adjuncts of the district courts, but are not Article III judges.  Magistrate Judges have powers delegated to them by district court judges, and carry out administrative duties including pre-trial hearings and misdemeanor trials.  The current presiding judge was not "pulled out of retirement;" instead, this judge assumed senior status on October 1, 2000.  A judge in senior state carries a lesser case load than an active judge; he retains the office of District Judge, but is retired from active service.  See 28 U.S.C. 371(b)(1).  This ground for relief will be denied for want of substantive merit.

**Ground (2): Mr. Williams Was Not Forced to Go to Trial; Nor
Did the Court Participate in Plea Negotiations**

Mr. Williams alleges that the court injected itself into the plea negotiations in order to "derail" the plea offer – and force him to go to trial or to face a longer sentence. (Petitioner's Brief at 6). Mr. Williams alleges that the court decided that he needed to serve more time in prison for the crime, then gave him and the government twenty minutes to come to an agreement that included more prison time for Williams, during which neither side made any recommendations as to an increase in the term of imprisonment. *Id.*

Mr. Williams' plea agreement under Criminal Rule 11(c)(1)(C) included a sentence of one year and one day. "To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). If the court rejects the plea agreement, then it must:

> Inform the parties that the court rejects the plea agreement; . . . advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the [guilty] plea; and . . . advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

*United States v. Self*, 596 F.3d 245, 248 (5th Cir. 2010) (*quoting* Fed. R. Crim. P. 11(c)(5)). The district court has the discretion to reject a plea agreement. *Id.* at 249.

At the change of plea hearing, Mr. Williams stated that he understood that the court decides whether to accept the plea agreement. (Change of Plea Transcript pg. 10). He testified that he understood that the plea agreement did not bind the court to a sentence of one year and one day, but the court could reject the agreement and allow him to withdraw his plea and go to trial. (Change of Plea Transcript pg. 11). The court also informed Mr. Williams that it was "conditionally accepting

- 7 -

[the plea agreement] and – on the condition that the plea agreement – what the sentence would be is determined to be acceptable." (Change of Plea Transcript pg. 17).

Judicial involvement in the plea negotiation process is strictly limited to rejection of the plea agreement – and an explanation for that rejection. *United States v. Self*, 596 F.3d 245, 250 (5th Cir. 2010); *see also* Fed. R. Crim. P. 11(c)(1). "[W]hen evaluating a district court's comments concerning a plea agreement, '[t]he proper inquiry is whether the district court was actively evaluating a plea agreement, as the court is required to do, or whether the court is suggesting an appropriate accommodation for a subsequent plea agreement, something this court found prohibited in *Miles*.'" *United States v. Smith*, 417 F.3d 483, 488 (5th Cir. 2005) (quoting *United States v. Crowell*, 60 F.3d 199, 204 (5th Cir. 1995)).

At the sentencing hearing, the court stated,

I want to advise the parties that there's a plea agreement that I've looked at, considered very thoroughly, and do not feel that it's in the best interests of the Court to accept this plea agreement.

It's an [11(C)(1)(c)] plea agreement. It's just so at odds with the sentencing guidelines that I do not feel it's appropriate in this case. So what we're going to do, Mr. Hill, is you have an opportunity to withdraw your plea and to go trial and – or you can go forward with the sentencing. I want to give you some time to think about that.

(Mar. 9, 2015 Sentencing Hearing Transcript pg. 2). Defense counsel noted that he and Mr. Williams

have discussed that notion already, but I want to confirm with him that I am doing what he wants me to do when I report to the Court.

*Id.* at 2-3. The court thus limited its discussion of the plea agreement to its reason for rejecting the agreement. The court neither suggested an alternate plea agreement nor inserted itself into the plea negotiations. The court then recessed for fifteen minutes to give Mr. Williams an opportunity to discuss with his attorney whether he wished to withdraw his plea and go to trial – or to go forward with sentencing. Nothing in the record suggests that the court wished to give

- 8 -

the government and defense counsel time to come up with a new agreement with a higher sentence. *Id.* at 2-3.

After the recess, defense counsel announced that Mr. Williams wished to withdraw his plea and go to trial. (March 9, 2015 Sentencing Hearing Transcript p. 3). Mr. Williams was not forced to go to trial; he chose to do so after conferring with counsel. In addition, the court was aware of Sian Green's testimony and the fact that Mr. Green had returned to Jamaica and was unwilling to return for trial, as the government recounted this information when stating the proof it would expect to present in a trial of the matter. (Change of Plea Transcript pg. 14-15). This ground for relief is likewise without substantive merit.

### Ground (3): The Court Did Not Fail to Issue Jury Instructions

Mr. Williams next claims that the court failed to issue jury instructions. (Petitioner's Brief pg. 11). This claim is without substantive merit. The court instructed the jury – in open court – on the duties of the jury, the verdict, presumption of innocence, expert opinions, the government's burden of proof, evidence, and the charges, elements of the charges, and definitions, among other things. (Trial Transcript pg. 390-401). It appears that Mr. Williams primarily challenges the court's decision not to include an instruction prohibiting the jury from making a negative inference regarding his decision not to testify. The Supreme Court has spoken regarding the use of jury instructions to protect a criminal defendant's right not to testify:

> A trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, *if requested to do so*, use the unique power of the jury instruction to reduce that speculation to a minimum.

*Carter v. Kentucky*, 450 U.S. 288, 303 (1981) (emphasis added).

- 9 -

Mr. Williams claims that the court erred in refusing to issue an instruction regarding Williams' right not to testify. This assertion is directly contradicted in the record. The court asked if Mr. Williams would like for the court to give the instruction on the defendant's right not to testify. Counsel responded, "It's like you're dam[ned] if you do and you're damned if you don't. . . . Historically, I would ask that we don't call attention to it." (Trial Transcript pg. 388-89). The court did not to give the instruction. Defense counsel did not object. Counsel did not ask for the instruction – and actively rejected it. The court did not commit plain error, and the issue is without substantive merit.

Mr. Williams had the right to testify in his own behalf, had he chosen to do so. A defendant in a criminal case has the right to take the witness stand and testify in his own behalf under the due process clause of the Fourteenth Amendment, the compulsory clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987) (citing U.S. CONST. Amends. V, VI, XIV).

At trial, outside of the jury's presence, the court questioned Mr. Williams regarding his decision not to testify:

> Court: Very well. Mr. Williams, are you aware – do you understand that you have the right to testify in your own defense if you choose to do so?
>
> Williams: Yes, sir.
>
> Court: Of course – and, also, the law provides that if you choose not to testify, that is purely your decision and no comment would be made, or inference will be made, to hold it against you for exercising your constitutional right not to testify. Do you understand that?
>
> Williams: Yes, sir.
>
> Court: So, you're telling the Court it is your decision to choose to exercise your constitutional right and not testify in the case?

- 10 -

Williams: Yes, sir.

(Trial Transcript pp. 346-47). No one prevented Mr. Williams from testifying in his own behalf. He chose not to and fully understood that decision. This claim is without substantive merit.

### Grounds (4), (5)  Mr. Williams Enjoyed the Right to Confront Mr. Green – a Witness Against Him

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. Amend. VI. Mr. Williams argues that the government violated the Sixth Amendment Confrontation Clause by failing to produce a witness, Sian Green, at trial. (Petitioner's Brief pg. 15). As discussed below, this claim is wholly without merit.

Sian Green was arrested in Atlanta, Georgia under authority of a material witness warrant as contemplated by 18 U.S.C. § 3144. (Doc. 21). Section 3144 provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

When he was arrested, Mr. Green confessed to federal agents, implicating both himself and Mr. Williams in the arson. (Doc. 21). Mr. Green, a Jamaican national, was in possession of an airline ticket to Jamaica when he was arrested. (Doc. 21). The statute governing detention of material witnesses requires that the government detain a material witness only so long as necessary to procure his deposition. 18 U.S.C. § 3144. The government thus filed a motion under Fed. R. Crim. P. 15 to depose Mr. Green. (Doc. 21). The court granted the motion. (Doc. 22). Mr. Williams and his attorney

- 11 -

were present at the deposition, and defense counsel raised objections and cross-examined Mr. Green. (Green Deposition Transcript pp. 4-5)[1].

At the deposition, Mr. Green was served with a trial subpoena and informed that the government would pay his travel expenses to return to the United States for trial. (Green Deposition Transcript at 81-82). Mr. Green's visa expired during his detention, prior to the deposition. (Green Deposition Transcript pg. 81). Upon release on bail, Mr. Green returned to Jamaica and refused to come back for trial. (Doc. 38). In Jamaica, Mr. Green was beyond the power of federal process, and the government could not compel his return for trial.

Federal Rule of Criminal Procedure 15(e) provides that deposition testimony "so far as [it is] otherwise admissible under the rules of evidence, may be used if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence." Federal Rule of Evidence 804(a)(5) defines unavailability as being "absent from the hearing and the proponent of [his] statement has been unable to procure [his] presence by process or other reasonable means." Ordinarily, the government must establish unavailability of the witness to satisfy the requirements of the Confrontation Clause, which generally does not allow admission of testimony where the defendant is unable to confront the witness at trial. This rule is not, however, without limit. The lengths to which the government must go to produce a witness to establish the witness' unavailability is a question of reasonableness, and the government is not required to undergo efforts that would be futile. *United States v. Aguilar-Tamayo*, 300 F.3d 562, 565 (5th Cir. 2002).

---

[1] The court could not locate a transcript of Mr. Green's deposition in the record. The parties do not dispute the words Mr. Green used in the deposition, only the truthfulness of those words. Indeed, a video of the deposition was played for the jury. As such, the court has used citations to the deposition transcript taken from the Government's brief, rather than directly from the deposition transcript itself.

- 12 -

In the present case, the government served Mr. Green with a subpoena while he was still in custody. The government confirmed that he understood that it would pay his travel expenses to return for trial. The government also could not have, as Williams argues, held Green until trial. Under § 3144, a material witness can only be detained for a reasonable length of time in order to secure his testimony by deposition. That is what occurred in this case. The government was likewise not required to make efforts that would be futile, such as procuring additional subpoenas when Mr. Green was beyond the court's subpoena power – or purchasing a plane ticket after he confirmed that he would not return to the United States for trial. Therefore, the government made all reasonable efforts to procure his appearance at trial.

In any event, Mr. Williams' right to confront the witness against him was satisfied at the deposition. Federal Rule of Evidence 804(b)(1) provides that testimony that was given as a witness at a lawful deposition and is offered against a party who had an opportunity and similar motive to develop it by direct examination, cross-examination, or redirect examination is not excluded by the rule against hearsay if the declarant is unavailable as a witness. *See also Crawford v. Washington*, 541 U.S. 36 (2004). As set forth above, Mr. Green was unavailable under Rule 804(a)(5). Mr. Williams and his attorney were present at the deposition, and Mr. Williams' attorney cross-examined Green, objected on various grounds, and the court ruled on those objections. Redactions were made to the video deposition to comply with those objections.

Mr. Williams also alleges that the government paid for Mr. Green's ticket back to Jamaica in order to place him outside of the subpoena power and to violate Williams' right to confront witnesses against him. The record contradicts this bald assertion, as Mr. Green already possessed the ticket to Jamaica *when he was arrested by federal marshals*. (Docs. 21 & 38; Green Deposition Transcript p. 78; Trial Transcript p. 52, 144, 152-53).

- 13 -

**Ground (6):  Mr. Williams' Speedy Trial Rights Were Not Violated
Under Either the Constitution or the Speedy Trial Act.**

The Speedy Trial Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c).

Mr. Williams was indicted October 13, 2013; his trial began on May 18, 2015, for a total time period of one year and seven months (contrary to Mr.  Williams' contention that three years elapsed between his indictment and trial).  He entered a guilty plea, which was conditionally accepted pending review of the sentencing agreement, on November 11, 2014.  The court rejected the plea agreement on March 9, 2015; the order granting Mr. Williams' request to withdraw his guilty plea was entered on March 13, 2015.

The Speedy Trial Act states:

> If trial did not commence within the time limitation specified in Section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of Section 3161, on the day the order permitting withdrawal of the plea becomes final.

18 U.S.C. § 3161(i).  Under § 3161(i), Mr. Williams is deemed indicted (within the meaning of that statute) on March 13, 2015, when the court entered the order granting his motion to withdraw his guilty plea.  His trial commenced on May 18, 2015, just over two months after the order was entered.  As such, Mr. Williams' Speedy Trial Act claim is without substantive merit.

**Mr. Williams' Sixth Amendment Speedy Trial Rights Were Not Violated.**

- 14 -

Defendants also have a Sixth Amendment right to a speedy trial. In *Barker v. Wingo*, the Court identified four factors to be considered in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial. Those four factors are: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The length of the delay operates as a triggering mechanism; "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* "A defendant's right to a speedy trial 'attaches at the time of arrest or indictment, whichever comes first. The delay between arrest or indictment and trial crosses the line from 'ordinary' to 'presumptively prejudicial' somewhere around the one-year mark. *Amos v. Thorton*, 646 F.3d 199, 206 (5th Cir. 2011) (finding that a sixteen-month delay between arrest and trial was sufficient to trigger the full *Barker* analysis). In this case, nineteen months elapsed between Williams' indictment and the beginning of his trial, a presumptively prejudicial delay.

The second function performed by Barker's first factor is:

> an inquiry into "the extent to which the delay extends beyond the bare minimum required to trigger a Barker analysis," which is particularly "significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time." The bare minimum required to trigger a Barker analysis is one year. A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused.

*Id.* at 206–07. The delay between Williams' indictment and trial exceeded the one-year minimum by seven months. Such delay favors Mr. Williams' speedy trial claim. *See Id.* at 207.

The second factor in the Barker analysis is the reason for the delay. The government must carry the burden of assigning valid reasons for the delay. *See id.*; *Barker*, 407 U.S. at 531.

> Different reasons are entitled to different weight: At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the

- 15 -

> spectrum, delays explained by valid reasons or attributable to the conduct of the
> defendant weigh in favor of the state. Between these extremes fall unexplained or
> negligent delays, which weigh against the state, "but not heavily."

*Amos*, 646 F.3d at 207 (5th Cir. 2011) (quoting *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir.

2008). In this case, most of the delay is attributable to the conduct of the defendant. He filed five

motions for continuances, four of which were granted, resulting in a 112-day delay. The government

only filed one motion for continuance because an expert witness was not available on the date of the

trial, resulting in a 91-day delay. Mr. Williams did not contest that motion. The change of plea

hearing was held on November 3, 2014. The sentencing hearing at which the court rejected the plea

agreement was held on March 9, 2015, for a four-month and six-day delay. This factor weighs in

favor of the government.

The third *Barker* factor, the defendant's assertion of his right, also weighs strongly against the

Mr. Williams. A "'defendant's assertion of his speedy trial right' receives 'strong evidentiary weight,'

while 'failure to assert the right will make it difficult for a defendant to prove that he was denied a

speedy trial.'" *Id.* (quoting *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009). Mr.

Williams never asserted his speedy trial right.

> Williams also cannot prove that he suffered any prejudice as a result of the delay.

> Prejudice, of course, should be assessed in the light of the interests of defendants
> which the speedy trial right was designed to protect. This Court has identified three
> such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety
> and concern of the accused; and (iii) to limit the possibility that the defense will be
> impaired. Of these, the most serious is the last, because the inability of a defendant
> adequately to prepare his case skews the fairness of the entire system. If witnesses die
> or disappear during a delay, the prejudice is obvious. There is also prejudice if defense
> witnesses are unable to recall accurately events of the distant past. Loss of memory,
> however, is not always reflected in the record because what has been forgotten can
> rarely be shown.

*Barker*, 407 U.S. at 532.

- 16 -

"Ordinarily the burden is on the defendant to demonstrate actual prejudice. But where the first three factors together weigh heavily in the defendant's favor, we may conclude that they warrant a presumption of prejudice, relieving the defendant of his burden." *Amos*, 646 F.3d at 208 (quoting *Molina-Solorio*, 577 F.3d at 307). The first three factors do not weigh heavily in Williams' favor, so he has the burden of proving prejudice. Indeed, Mr. Williams was out on bond during the entire pretrial delay.

In addition, Mr. Williams has not shown that he experienced any anxiety or concern. He claims, instead that, because of the delay, the government was able to "dump the body" by flying Sian Green back to Jamaica. To briefly recount the facts regarding Mr. Green's travel, Mr. Green, a Jamaican national, was arrested on a material witness warrant. The government, by law, could not hold him longer than necessary to obtain his deposition. The government did not hide evidence. Williams was also not prejudiced in any way because he and his attorney attended the deposition of Green. Mr. Williams was able to face his accuser, and his attorney extensively cross-examined Mr. Green. Indeed, the deposition was videotaped, which allowed the jury to see Green's reactions, mannerisms, and expressions during his testimony. This factor weighs against Mr. Williams.

Three of the four *Barker* factors weigh against Mr. Williams' speedy trial claim; as such, he enjoyed his Sixth Amendment right to a speedy trial, and his claim is without substantive merit.

### Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient, and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel"

guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

### Grounds 7(a) through 7(f): Counsel Failed to File Various Pretrial Motions and Subpoenas

Mr. Williams first argues that trial counsel's representation was deficient because he failed to file: 7(a) – a motion to dismiss the indictment, 7(b) – a *Brady* motion, 7(c) – a subpoena for Sian Green, 7(d) and 7(e) – motions challenging the admission of Green's video deposition, and 7(f) – a motion for discovery regarding the government's warrant witness, Sian Green. Counsel need not file futile motions, and the filing of pretrial motions is a matter of trial strategy. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (citing *William v. Beto*, 354 F.2d 698, 703 (5th Cir.1965)).

### Ground 7(a): Motion to Dismiss Indictment

Mr. Williams has failed to show that his trial counsel's decision not to file a motion to dismiss the indictment was outside of the range of reasonable competence and trial strategy. A motion to

dismiss the indictment because, as Williams claims, "there exists no conspiracy because there are no

other charged actors" would have been futile. (Petitioner's Brief pg. 32). The elements of a

conspiracy under 18 U.S.C. § 371 are: (1) an agreement between two or more people to violate the

law of the United States, (2) that one of the conspirators committed an overt act in furtherance of that

agreement, and (3) that the defendant knew of the conspiracy and voluntarily participated in it. 18

U.S.C. § 371. It is not required that any other member of the conspiracy be charged; indeed a

defendant may be charged with conspiracy when the identities of the co-conspirators are as yet

unknown. *See Rogers v. United States*, 340 U.S. 367, 375 (1951) ("Of course, at least two persons are

required to constitute a conspiracy, but the identity of the other members of the conspiracy is not

needed, inasmuch as one person can be convicted of conspiring with persons whose names are

unknown").

### Ground 7(b): Motion for Brady Materials

Counsel actually filed a motion for discovery seeking, among other things:

a list of any information and copies of any material(s) known to the government and
which may be favorable to the Defendant on the issues of guilt or punishment, without
regard to materiality, within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963); *U.S.
v. Bailey*, 473 U.S. 667 (1985); and *Kyles v. Whitley*, 514 U.S. 419 (1995) ….

Doc. 18 at 3. The request included and extremely detailed description of the type of information

covered by the discovery request. *Id.* at 3-4. This ground for relief is squarely contradicted in the

record.

### Ground 7(c): Subpoena for Sian Green

Additionally, defense counsel's issuance of a subpoena for Sian Green would also have been

futile. Mr. Green had already been served with a subpoena by the government, on video and in

Williams' presence, during the deposition. Further, Mr. Green had gone home to Jamaica, outside of

the subpoena power of the federal government and Williams' attorney. This ground for relief is without merit.

### Grounds 7(d) and 7(e): Motions Challenging the Admission of Sian Green's Video Deposition Into Evidence

Mr. Williams has not shown how his attorney's failure to file a pre-trial motion objecting to the deposition of Sian Green fell below an objective standard of reasonableness. Trial counsel knew that Green was arrested on a material witness warrant and could not be detained until the trial. Counsel further knew that Green was a Jamaican national and would return to Jamaica once released. The agreement to the deposition was sound trial strategy to obtain testimony and test the credibility of Mr. Green. Mr. Williams' counsel extensively and effectively cross-examined Green at the deposition. Counsel thoroughly questioned Mr. Green about his immunity agreement, his actions on the night of the fire, and his shifting stories. (Green Deposition Transcript pp. 35-78). However, "it is the province of the jury to make such credibility determinations." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (citing *United States v. Schuchmann*, 84 F.3d 752, 756 (5th Cir. 1996).

Further, the redactions made to the video were in response to the court's order on the admissibility of the video deposition. (Doc. 46). The redactions were to eliminate the portions of questioning for which the court sustained objections. Defense counsel reviewed and approved the redacted video prior to trial. (Trial Transcript pp. 327-29). Further, as set forth above, there was abundant evidence that Green paid for his ticket to Jamaica himself and had it on him at the time of the arrest. (Docs. 21 & 38; Green Deposition Transcript pg. 78; Trial Transcript pp. 52, 144, 152-53). A subpoena to find out who paid for the plane ticket would have been pointless. Williams has not shown how this constituted an objectively unreasonable decision. All of these decisions not to file pre-trial motions were tactical decisions that should be given deference.

- 20 -

**Ground 7(f):  Motion for Discovery**

Finally, Williams' trial counsel did file a motion for discovery under which he requested all evidence discoverable under the Federal Rules of Criminal Procedure and *Brady*. (Doc. 18).  Williams has also not shown prejudice from his attorney's actions, as he has not shown that the outcome of his trial would have been different had his counsel filed pre-trial motions.  If counsel had filed a motion to dismiss the indictment or to challenge the deposition testimony, he would have lost.  As Sian Green had already been subpoenaed by the government and refused to comply, a subpoena by defense counsel would have made no difference, as Mr. Green was beyond the power of the court to subpoena.

**Ground (8):  The Evidence Was Insufficient to Support the Verdict[2]**

Mr. Williams further argues that "Petitioner was not found to have been the arsonist by evidence, or even involved by any means and no witness was present at trial to express such." (Petitioner's Brief pg. 19).  This assertion is also flatly contradicted in the record.  Even if the evidence did not show that Mr. Williams physically lit the match to set the building on fire, great deal of circumstantial evidence led the jury to conclude that Mr. Williams participated in the conspiracy to commit arson, as charged in Count One of the Indictment.  The evidence also showed that he and Mr. Green aided and abetted each other in committing the arson, as charged in Count Two of the Indictment.  The court briefly summarizes the evidence against Mr. Williams below.

The government produced several witnesses who testified to Mr. Williams' dire financial condition at the time of the fire.  He was evicted from his apartment for failure to pay rent.  (Trial

---

[2] This claim for relief can be found throughout the instant § 2255 motion, though primarily in the ground involving confrontation of witnesses.  It is unclear whether Mr. Williams intended the claim to be part of the ineffective assistance of counsel section – or its own substantive claim.  The court has included the claim in the ineffective assistance of counsel section.  The claim fails both substantively and through the lens of ineffective assistance of counsel.

Transcript p. 232-234).  He owed money to Hardeep Kandola and Anil Sethi for the lease of the store. (Trial Transcript p. 156-57, 223-30).  His checks for the lease to Hardeep Kandola had bounced. (Trial Transcript p. 156-57).  He was approximately $10,000 in debt to the Libscomb Oil Company.  (Trial Transcript p. 167-69).  Several witnesses testified that the store contained virtually no inventory. (Trial Transcript p. 61, 161-62, 247, 259; Green Deposition Transcript p. 14-15).  The insurance agent testified that Mr. Williams had taken out an insurance policy on the inventory and contents of the store only two weeks before the fire.  (Trial Transcript p. 111-114).  Certainly these facts establish that Mr. Williams had motive to commit the crimes.

Many witnesses testified regarding Mr. Williams' conflicting stories about where he went the night of the fire. (Trial Transcript p. 89-92, 126-31, 194-99).  The surveillance equipment that was in the store had been ripped out, and Sian Green testified that Williams is the one who did so. (Trial Transcript p. 320; Green Deposition Transcript p. 20-21).  Mr. Green had not been paid in months for his work at the store. (Green Deposition Transcript p. 9-13, 17-18, 46).  Finally, Mr. Green testified that he conspired with Mr. Williams to set fire to the store. (Green Deposition Transcript p. 19-29).

Mr. Green testified that Williams said that both Green and Williams poured gasoline at several locations inside of the store and then set the fire. (Green Deposition Transcript p. 23-26, 50-60, 64-69). Mr. Green also testified that Williams told him what to say when questioned by investigators. (Green Deposition Transcript p. 30, 45).  Investigators stated that there were multiple points of origin of the fire inside the store and that an accelerant, gasoline, was found in the store.  (Trial Transcript p. 59-61, 65, 85, 93-96, 102, 185-90, 211-13, 272-80, 288, 307).

The jury, after weighing all the testimony and evidence, found Mr. Williams guilty of arson and conspiracy to commit arson. (Trial Transcript p. 402; Doc. 72).

Mr. Williams also argues that the government concealed evidence pertaining to a prior fire at another building owned by the owner of the convenience store, Lee Abraham. Lee Abraham owned several properties. Almost a year to the day before the fire at issue, another one of his buildings, that was located right across the street from the Exxon, burned down. Mr. Abraham was questioned about this prior fire in direct and cross examination. (Trial Transcript p. 249-50, 260). Thus, the record directly contradicts Mr. Williams' contention that the government concealed evidence regarding this prior fire. Counsel provided effective assistance in deciding not to raise this challenge.

**Ground (9): Trial Counsel Failed to Challenge Restitution.**

A district court does not have subject matter jurisdiction under 28 U.S.C. § 2255 to address challenges to restitution:

> [C]omplaints concerning restitution may not be addressed in § 2255 proceedings. In *Segler,* we concluded that " § 2255's limitation on who may seek release from federal custody also implies a limitation on the claims they may assert to obtain a release." *Id.* at 1137. Specifically, we held that the types of claims cognizable under § 2255 were limited to "claims relating to unlawful custody," not those relating "only to the imposition of a fine." *Id.*

*United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999). If Mr. Williams wishes to challenge his restitution obligation, then he may do so via a petition in the district court to modify its restitution order. *See* 18 U.S.C. § 3663(g). This claim must be dismissed for want of subject matter jurisdiction.

**Grounds (10) and (11): Trial counsel's Performance at the Plea Stage**

Williams next argues that his trial counsel was ineffective during the plea stage by: (10) failing to object to the court's rejection of the sentence agreement, and (11) failing to object to the 15-20 minute recess in which to "negotiate a new plea agreement with a higher sentence," as well as failing to negotiate with the government for a higher sentence during that time. As previously

- 23 -

explained, the court did not recess in order for the defense and government to negotiate a new plea deal with a lengthier sentence. Instead, the court did so to give defense counsel the opportunity to confer with Mr. Williams regarding whether he wished to go forward with sentencing, understanding that the court would likely impose a higher sentence than was agreed upon, or withdraw his plea and go to trial. (March 9 Sentencing Hearing Transcript pp. 2-3). Both the court and defense counsel had previously explained to Mr. Williams that the court could reject the plea agreement – and the ramifications of such a decision. (Change of Plea Transcript pp. 10-11, 17; March 9 Sentencing Hearing Transcript pp. 2-3). Mr. Williams has provided no evidence that defense counsel's decision not to object to the rejection of the sentencing agreement fell below an objective standard of reasonableness, or that had counsel objected, the outcome would have changed. This argument is without substantive merit.

### Ground (12): Trial Counsel Failed to Request a Jury Instruction Regarding Williams' Decision Not to Testify

Williams next complains that trial counsel did not ask for an adverse inference jury instruction following his decision not to testify. As discussed at length above, the decision not to ask for the instruction was a tactical one. It was not an oversight. The court asked if counsel wanted the instruction, noting that the instruction is a "two-sided coin," calling attention to the fact that the defendant did not testify. Defense counsel agreed, stating: "It's like you're damned if you do and you're damned if you don't. You know what I'm saying?" Counsel concluded, "I would ask that we don't call attention to it," thus rejecting the instruction. (Trial Transcript pg. 389).

Courts must give great deference to trial counsel's strategic decisions, "strongly presuming that counsel has exercised reasonable professional judgment." *Yohney*, 985 F.2d at 228. Defense counsel discussed his tactical decision with the court, and the court acknowledged that there are sound

- 24 -

reasons to ask for the instruction – and sound reasons not to. Given the amount and strength of the evidence introduced against Mr. Williams at trial, it is unlikely that a contrary decision would have changed the outcome of the proceedings. The court will not second-guess counsel's decision on this issue. This ground for relief is without substantive merit.

### Grounds (13) Through (18): Appellate Counsel Failed to Communicate or Bring Claims on Appeal

In his last six grounds for relief, Mr. Williams argues that his appellate counsel was ineffective for failure to communicate and failure to bring various claims on direct appeal. A collateral proceeding under 28 U.S.C. § 2255 is the most appropriate venue for a claim of ineffective assistance of counsel at trial, and that claim is not waived even if the defendant is represented by new counsel on direct appeal and does not present the issue at that time. *Massaro v. United States*, 538 U.S. 500 (2003). There may be occasions when ineffectiveness is so clear on the trial record that the matter may be considered on direct appeal, but such cases are unusual. *See, e.g., United States v. Ortiz-Vega*, 2017 WL 2664713 (1st Cir. June 21, 2017) (collecting cases). Nonetheless, appellate counsel brought two ineffective assistance of counsel claims on direct appeal. The Fifth Circuit denied the grounds for appeal without prejudice because the claims were not raised in the district court, and the record was "inadequately developed" to permit evaluation of the merits of the claims. *United States v. Williams*, 667 Fed. Appx. 489 (5th Cir. 2016). Hence, any attempts to bring additional ineffective assistance of counsel claims on direct appeal would also have been futile.

As to Ground (13), brevity of consultation between defendant and counsel, without more, does not support a claim of ineffective assistance of counsel. *Matheson v. King*, 751 F.2d 1432, 1439 (5th Cir. 1982). In *Murray v. Maggio*, 736 F.2d, 279, 282 (5th Cir. 1984), the defendant alleged that the defense attorney only talked to him once before trial for approximately twenty minutes. The court

- 25 -

stated, "Brevity of consultation between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Id.* Mr. Williams claims that he only spoke once to appellate counsel and he was not allowed to give input into which claims to bring. The Supreme Court has spoken to this issue:

> In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding Barnes, it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. See, e.g., *Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

The remaining claims Mr. Williams wished to raise would have been futile if raised in a direct appeal.[3] As discussed immediately above, appellate counsel was not required to challenge the effectiveness of trial counsel on direct appeal; as such, Ground (15) is without substantive merit. Further, as discussed earlier in this memorandum opinion, the government was unable to prevent witness Sian Green from leaving the country and unable to compel his presence through a subpoena once he left. Instead, the government took his deposition under 18 U.S.C. § 3144, and Mr. Williams, through counsel was able to cross-examine him. Hence, Ground (16) is without substantive merit.

The court has thoroughly discussed the propriety of rejecting the plea agreement in a previous section, and, as the rejection was proper, appellate counsel provided effective assistance in deciding not to challenge the rejection. Ground (17) is thus without substantive merit.

---

[3] As a challenge to the amount of restitution cannot be decided through 28 U.S.C. § 2255, the court will not address that issue, which Mr. Williams raised in Ground (14) of the instant motion. *See Hatten, supra.*

Finally, in Ground (18), Mr. Williams argues that appellate counsel provided ineffective assistance by failing to provide him with appellate documents, which caused him to file his own appellate brief, *pro se*. Even if the court were to find that counsel indeed failed to provide Mr. Williams with appellate documents, he has not provided proof that he was prejudiced in any way by such a failure. He has identified no issues that counsel failed to raise that would have led to a different outcome on appeal. As such, Mr. Williams has not satisfied either prong of the *Strickland* test as to any of his claims, and the instant motion to vacate, set aside, or correct sentence will be denied.

### Conclusion

In sum, none of the claims in the instant motion to vacate, set aside, or correct sentence has merit, and the instant motion will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of September, 2020.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE

- 27 -